UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KIANA LAGAYLE SMITH,

                 Plaintiff,                            Case No. 3:16-cv-01575
                                                      District Judge Aleta A. Trauger
v.                                             Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (DE 12) AND REMAND TO THE COMMISSIONER

I.     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for judgment on the

administrative record (DE 12), **REVERSE** the Commissioner's decision, and

**REMAND** this case to the Commissioner and the ALJ under Sentence Four of §

405(g) for further consideration consistent with the report below.

II.    **REPORT**

      Plaintiff, Kiana Lagayle Smith, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for social security disability insurance

(DI) benefits and supplemental security income (SSI) benefits. This matter is

before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for judgment on the administrative record and brief in support (DEs 12, 13), the Commissioner's response to Plaintiff's motion (DE 14), Plaintiff's reply brief (DE 15), and the administrative record (DE 10).

## A.    Background

Plaintiff filed her applications for DI and SSI benefits on January 4, 2013, alleging that she has been disabled since September 10, 2011.  (R. at 236-46.)  She subsequently amended her alleged onset date to February 6, 2012.  (R. at 41.) Plaintiff's application was initially denied on May 17, 2013, and upon reconsideration on July 9, 2013, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 9-11, 133-34, 177-78, 182-85, 191-94.) ALJ Elizabeth P. Neuhoff held a hearing on November 8, 2014, at which Plaintiff was represented by counsel.  (R. at 35-72.) The ALJ considered all of the evidence and, on February 5, 2015, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-29.) On April 27, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.) Thus, ALJ Neuhoff's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on June 30, 2016. (DE 1.)

## B.    Plaintiff's Medical History

The administrative record contains approximately 635 pages of medical records spanning the period from March 11, 2010 through September 19, 2014, including: (1) a February 8, 2013 Medical Source Statement by physician's assistant Kelly Smart; (2) an April 27, 2013 opinion by consulting examiner, Dr. Mark S. Josovitz; and (3) a July 14, 2014 opinion by Plaintiff's treating rheumatologist, Dr. Mohammad F. Ali. (R. at 41, 350-985.) The administrative record also contains State agency medical consultants' assessments (physical and mental) dated May 15, 2013 and July 8, 2013. (R. at 97-132, 135-76.) These records will be discussed in detail, as necessary, below.

## C. Hearing Testimony

Plaintiff testified at the November 18, 2014 hearing before ALJ Neuhoff. (R. at 42-62, 60-70.) Vocational expert Dana M. Stoller also provided testimony. (R. at 62-68.) The hearing testimony will be cited as necessary below.

## D. The Administrative Decision

On February 5, 2015, ALJ Neuhoff issued an "unfavorable" decision. At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

  1. Is the claimant engaged in substantial gainful activity?

3

engaged in substantial gainful activity since February 6, 2012, the amended alleged onset date. (R. at 18.) At **Step 2**, the ALJ found that Plaintiff has the following severe impairments: chronic degenerative changes in the left knee; degenerative changes in the left hip; rheumatoid arthritis; bipolar disorder; and depression. (R. at 18.) At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 19-21.) Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

> perform sedentary work … that is limited to lifting or carrying twenty pounds occasionally and ten pounds frequently; standing or walking one-and-a-half hours total in an eight-hour workday; sitting for more than six hours total in an eight-hour workday; occasionally reaching with the right upper extremity; occasionally pushing and pulling with the left upper extremity; occasionally climbing ramps and stairs but

---

2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

4

never climbing ladders or scaffolds; never crouching, crawling or kneeling; occasionally balancing and stooping; frequently handling with the bilateral upper extremities; and avoiding temperature extremes and hazards such as unprotected heights or moving machinery. Mentally, the claimant is able to understand, remember, and perform simple tasks only and she is able to maintain attention and concentration adequately for those tasks. She can interact appropriately with coworkers, supervisors, and the general public but contact with the general public should be occasional only. She is able to adapt to infrequent and gradual changes within the workplace.

(R. at 21-27.) At **Step 4**, the ALJ found that Plaintiff had no past relevant work.

(R. at 27.) At **Step 5**, considering Plaintiff's age, education, work experience, and

RFC, the ALJ determined that there were jobs that existed in significant numbers

in the national economy that Plaintiff could perform. (R. at 28.) The ALJ

therefore concluded that Plaintiff had not been under a disability, as defined in the

Social Security Act, since February 6, 2012, the amended alleged onset date,

through the date of the decision. (R. at 29.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

5

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability."  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

F.     **Analysis**

In her motion for judgment on the administrative record, Plaintiff asserts three statements of error. First, she contends that the ALJ failed to properly consider and weigh the opinion evidence from her treating rheumatologist, Dr. Mohammad F. Ali. Second, she argues that the ALJ failed to consider and weigh the opinion of the consulting examining physician, Dr. Mark Josovitz. And third, she asserts that the ALJ failed to provide limitations regarding concentration, persistence and pace in the RFC to account for Plaintiff's "moderate" limitations in this area. (DE 13.) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision. (DE 14.) Because I find that the ALJ erred in his evaluation of Plaintiff's treating physician's opinion, and that this matter should be remanded on that basis, I will not address the merits of Plaintiff's other arguments.

### 1. The ALJ's Evaluation of Plaintiff's Treating Physician's Opinion

#### a. Treating source opinion evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Administrative law judges "will

8

consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

For claims filed before March 27, 2017, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)). "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir.

9

2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[3] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating

---

[3] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

10

source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547); *see also, Betty v. Comm'r of Soc. Sec.*, No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

11

### b.    Dr. Mohammad Ali's Opinion

Dr. Mohammad F. Ali, a rheumatologist, began treating Plaintiff in March 2012, and continued to treat her through at least the time of the administrative hearing on November 18, 2014.  (R. at 49-50, 481-523, 645-51, 737-57, 802, 862-67.)  Throughout that time period, Dr. Ali performed physical examinations of Plaintiff, conducted diagnostic tests and imagings, diagnosed her with rheumatoid arthritis (active), and prescribed different medications and treatments, including infusions.  (*Id.*)  On July 9, 2014, Dr. Ali stated that Plaintiff was being treated for rheumatoid arthritis, and explained that:

> Rheumatoid Arthritis (RA) is an autoimmune disease that causes chronic inflammation of the joints, tissues, and other organs in the body.  It can be a disabling and painful condition, which can lead to substantial loss of mobility due to chronic pain.  The symptoms of RA can come and go depending upon the degree of inflammation.  When body tissues are inflamed, the disease is active, and when the inflammation subsides the disease is inactive.

(R. at 802.)  Dr. Ali then opined that "[d]ue to [Plaintiff's] RA, she is unable to use her hands, she is unable to grip, make a fist, or do any kind of repetitive activity using her hands."  (*Id.*)[4]

---

[4] Plaintiff asserts that Dr. Ali (whom she mistakenly refers to as "Dr. Mohammad") submitted two opinions, the July 9, 2014 opinion above, and one on January 14, 2013.  (DE 13 at 11, citing R. at 482, 802.)  However, the January 14, 2013 letter from Dr. Ali simply provides the same explanatory language regarding Rheumatoid Arthritis contained in Dr. Ali's July 9th letter, but without any further opinion regarding Plaintiff's functional limitations or restrictions.  (*See* R. at 482.)  Accordingly, only Dr. Ali's July 9, 2014 opinion is at issue.

12

ALJ Neuhoff wholly rejected Dr. Ali's opinion, expressly giving it "no weight." (R. at 26-27.) She states that she:

> finds this [opinion] to be inconsistent with the claimant's ability to use a walker and cane and complete disability paperwork, her reported daily living activities, the consistent examination findings of normal strength, and the assessments from Ms. Smart and the State agency medical consultants. In addition, the undersigned observed the claimant enter into the hearing room, pushing her walker with both hands and when she sat down she pulled the walker to her with both hands. Accordingly, the undersigned gives Dr. Ali's assessment no weight.

(R. at 26-27.)

With regard to the remaining opinion evidence, the ALJ similarly gave "no weight" to the April 27, 2013 opinion of the consulting examining physician, Dr. Mark S. Josovitz. (R. at 26, 610-16.) Instead, the ALJ gave "great weight" to the February 8, 2013 opinion of a physician's assistant, Kelly Smart (R. at 26, 595-602), and "significant weight" to the State agency medical reviewer's assessments dated May 15, 2013 and July 8, 2013 "insofar as they are consistent with the residual functional capacity." (R. at 26, 97-132, 135-76.)

### i.      Controlling weight

Initially, I note that in weighing the opinion evidence of Dr. Ali, the ALJ did not mention the concept of "controlling weight" and never specifically declined to afford this opinion controlling weight, although it is undisputed that he is Plaintiff's long-time treating rheumatologist. *See Wilson v. Comm'r of Soc. Sec.*,

13

378 F.3d 541, 544 (6th Cir. 2004) (stating that the regulations are designed to "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule"). "Such failure is error where the Court cannot determine whether the ALJ undertook the 'two-step inquiry' required when weighing treating source opinions." *Martin*, 207 F.Supp.3d at 789 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013); *Chrisman v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013)). ALJ Neuhoff also failed to provide any analysis of the controlling weight factors—*i.e.*, whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2). Instead, as discussed further below, the ALJ's critique of Dr. Ali's opinion seems to focus on the "consistency," and perhaps "supportability," factors set forth in 20 C.F.R. §§ 404.1527(c)(3) an (4), which would apply only *after* the ALJ declines to "give the treating source's opinion controlling weight[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart*, 710 F.3d at 376 (noting that certain factors are "properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight"). Such failure amounts to reversible error. *See Gayheart*, 710 F.3d at 377 (finding error where the ALJ's "analysis does not explain to which aspect of the controlling weight test [a] critique is relevant").

14

### ii. *Wilson factors*

Even if the ALJ had properly conducted the "controlling weight" analysis above, as she was required to do, she is still required to apply the regulatory (or *Wilson*) factors and give "good reasons" for rejecting Dr. Ali's opinion. This is so because even when "controlling weight" is not given, the opinions of a treating physician are still entitled to "substantial deference or some weight." *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009); *see also* SSR 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator."). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR. 96–2p, 1996 WL 374188, at [*]5 (July 2, 1996). As explained above, failure to properly apply the *Wilson* factors can constitute harmless error only if: (1) Dr. Ali's opinion "is so patently deficient that the Commissioner could not possibly credit it;" (2) the Commissioner adopts the opinion; or, (3) where the ALJ has otherwise met the regulation's goal. *See Nelson*, 195 F. App'x at 470. However, I find that Dr. Ali's opinion is not "patently deficient," and it certainly was not adopted by the

15

Commissioner. Further, I find, for the reasons set forth below, that the reasons given in declining to afford Dr. Ali's opinion controlling weight—and in fact wholly rejecting it—are unsupported by substantial evidence.

Dr. Ali has been Plaintiff's treating rheumatologist since March 2012, and has treated her continuously through at least the November 18, 2014 administrative hearing. (R. at 49-50, 481-523 645-51, 737-57, 802, 862-67.) The ALJ failed to address Dr. Ali's specialization as a Rheumatologist, or the length, frequency, or nature and extent of the treatment relationship, when rejecting Dr. Ali's opinion evidence. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c). She instead first stated that she found his opinion "inconsistent with the claimant's ability to use a walker and cane and complete disability paperwork, [and] her reported daily activities[.]" (R. at 26.) She also stated that she observed at the hearing that Plaintiff was pushing and pulling her walker with both hands. (R. at 27.) The ALJ fails to explain how the tasks she cites are so inconsistent with Dr. Ali's opinion that Plaintiff is "unable to use her hands, grip, make a fist, or do any kind of *repetitive* activity using her hands" that his opinion should be flatly rejected. (R. at 26, 802 (emphasis added).) Plaintiff testified in the hearing, however, that she tries not to use the hand brakes on her walker because it hurts to "grip it," and that she instead tries to use her foot or walk slower, and stated in her function reports that her hands hurt so much that she tries not to use them. (R. at 50, 302-09, 319-26.)

16

*See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding.").

The ALJ also stated that Dr. Ali's opinion is inconsistent with "the consistent examination findings of normal strength[.]" (R. at 26-27.) However, the ALJ is cherry-picking one isolated examination finding to reject a treating physician's opinion, while ignoring the diagnoses of synovitis in Plaintiff's knee (starting in February 2012), repeated findings of pain, crepitus and decreased range of motion in Plaintiff's knees (starting in March 2012), synovitis in Plaintiff's hands (starting in August 2012 and continuing), synovitis in her wrists (starting in June 2013), increasing complaints of severe hand and knee pain (in 2013 and 2014), and synovitis and pain in her feet and shoulder as well (starting in February 2014), along with complaints of difficulty performing multiple activities including: tying shoes, doing buttons, lifting a glass to her mouth, and turning faucets on and off. (R. at 22-23, 482-523, 645-51, 737-57, and 862-67.) *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) ("the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain") (citing *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (per curiam) (noting the ALJ "was selective in parsing the various medical

17

reports"); *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) (noting ALJ's conclusion was "grounded in a myopic reading of the record combined with a flawed view of mental illness")).

Further, the ALJ summarily stated, without any further elaboration, that Dr. Ali's opinion was "inconsistent" with "the assessments of Ms. Smart and the State agency medical consultants." This conclusory statement fails to satisfy the "meaningful explanation" requirement. First, although the ALJ classifies Ms. Smart as "claimant's treating physician's assistant" (R. at 26), there is no "treating physician's assistant rule" and her opinion is not entitled to any particular deference or weight. *See Hancock v. Comm'r of Soc. Sec.*, No. 1:16-cv-1105, 2017 WL 2838237, at *7 (W.D. Mich. July 3, 2017) (recognizing that a physician's assistant is not an "acceptable medical source," but rather classified as an "other source"); SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Second, even though Ms. Smart indicated that she began treating Plaintiff in 2006, when Ms. Smart examined Plaintiff on February 6, 2012, her notes indicate that she had not seen Plaintiff since December 28, 2009. (R. at 652.) Then, there are no records showing that she examined or treated Plaintiff *at all* before she signed the Medical Source Statement one year later, on February 8, 2013. (R. at 595-602.) In addition, her Medical Source Statement is dated more than 17 months before Dr. Ali's opinion, and thus was not based on a review of the complete record,

18

including the diagnoses of synovitis in Plaintiff's hands and wrists. Yet, the ALJ gave the *physician's assistant's opinion*—based on seeing Plaintiff *one time* in over 3 years—"great weight," and incredibly, without any analysis, cited this opinion as a reason to reject the opinion of Plaintiff's long-time treating rheumatologist, Dr. Ali.

The ALJ also found Dr. Ali's opinion "inconsistent" with the assessments of the State agency reviewing consultants, whose opinions she summarily gave "significant weight insofar as they are consistent with the residual functional capacity." (R. at 26.) Preliminarily, this is circular and self-serving reasoning. In essence, the ALJ is giving greater weight to these opinions because they agree with the ALJ's own formulation of the RFC, and rejecting those opinions that do not. It is like saying, "If you agree with my conclusion, you are worth listening to; if you don't, you are not." Moreover, as with Ms. Smart's opinion, the ALJ's "analysis" of the reviewer's opinions is conclusory and fails to satisfy the "meaningful explanation" requirement. Further, the State agency reviewing consultants rendered their assessments in May 2013 and July 2013, at least one year before Dr. Ali's July 2014 opinion, and thus their assessments did not take the entire record into account, including the continuing findings of synovitis in Plaintiff's hands, or the July 9, 2014 opinion of Dr. Ali. *See Gayheart*, 710 F.3d at 379-80 ("His failure to apply the same level of scrutiny to the opinions of the consultative doctors upon

19

which he relied, let alone the greater scrutiny of such sources called for by 20 C.F.R. § 404.1527, further demonstrates that his assessment of [the treating source's] opinions failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis."); *see also Caffey v. Comm'r of Soc. Sec.*, No. 14-cv-02640-TMP, 2017 WL 4005450, at *5 (W.D. Tenn. Sept. 12, 2007) ("The ALJ's failure to apply the multi-factor analysis to the state consultants' opinions lessens the probative value of any inconsistencies between the state consultants' opinions and Dr. Robinson's opinion.").

Based upon all the above, I find that the ALJ's rejection of Dr. Ali's opinion does not meet the procedural requirements of 20 C.F.R. § 404.1527, and her decision is not supported by substantial evidence.

## 2. Remand under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming,

20

denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)). Here, the ALJ's rejection of Dr. Ali's opinion does not meet the procedural requirements of 20 C.F.R. § 404.1527. Accordingly, I recommend that the Court remand this case under Sentence Four. *See Cole*, 661 F.3d at 939 (The Sixth Circuit "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and [the Sixth Circuit] will continue remanding when [it] encounters opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

G.    **Conclusion**

21

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for judgment on the administrative record (DE 12), **REVERSE** the Commissioner's decision, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 26, 2018

s/Anthony P. Patti
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE
SITTING BY SPECIAL DESIGNATION